Filed 11/13/20  P. v. Bedford CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>L C BEDFORD,<br><br>    Defendant and Appellant. | F078236<br><br>(Kern Super. Ct. No. DF012972A)<br><br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  David E. Wolf, Judge.

Jyoti Meera Malik, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Robert Gezi, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*] Before Levy, Acting P.J., Poochigian, J. and Detjen, J.

## INTRODUCTION

Appellant/defendant L C Bedford, a state prisoner, pleaded no contest to felony obstructing or resisting an executive officer (Pen. Code, § 69)[1] and admitted a prior strike conviction, for a stipulated second strike term of 32 months in prison.

On appeal, he argues the matter should be remanded so the court can consider whether to grant pretrial mental health diversion pursuant to section 1001.36. He also asserts the court improperly imposed a restitution fine and other fees without finding he had the ability to pay those amounts in violation of his constitutional right to due process, based on *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*). We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Based on the allegations in the complaint, on or about February 24, 2017, defendant was a state prison inmate when he allegedly obstructed an officer and attempted to steal bananas from the prison.

On August 14, 2017, a felony complaint was filed that charged defendant with count 1, battery by a person confined in a state prison upon Officer Mercy Dalby, a nonprisoner (§ 4501.5) and count 2, misdemeanor attempted petty theft of bananas from California Department of Corrections and Rehabilitation (CDCR) (§§ 664/488). It was further alleged defendant had one prior strike conviction and eight prior prison term enhancements (§ 667.5, subd. (b)). Defendant pleaded not guilty and denied the allegations.

### Plea proceedings

On May 31, 2018, the court granted the People's motion to amend the complaint to add count 3, felony obstructing or resisting an executive officer (§ 69) with a prior strike conviction.

---

[1] All further statutory citations are to the Penal Code unless otherwise indicated.

Thereafter, defendant pleaded no contest to count 3 and admitted the prior strike conviction, pursuant to a negotiated disposition for a stipulated second strike lower term of 32 months in state prison. The court dismissed the remaining charges and allegations on condition that defendant's no contest plea remain in effect.

On June 27, 2018, section 1001.36 was signed into law.

**Motion to withdraw the plea**

On June 29, 2018, defendant advised the court that he wanted to withdraw his plea and admission. The court continued the matter and set a hearing for appointment of counsel for a possible motion to withdraw the plea.

On July 2, 2018, the court temporarily relieved the deputy public defender and appointed another attorney to investigate a possible motion to withdraw his plea.

On September 26, 2018, the court convened a hearing on defendant's possible motion to withdraw the plea. The newly appointed attorney stated he had reviewed the entirety of the record and concluded that he could not make a motion to withdraw in good faith. The court denied defendant's motion to withdraw the plea, relieved the second counsel, and reappointed the deputy public defender.

Defendant addressed the court and said he wanted to withdraw his plea and admission.

> "I'm a triple CMS. And that's a mental health program at Kern County State Prison. And I was on medication at the time, and I wasn't aware of what you was saying [*sic*] or what [my attorney] was saying. I was going on what [my attorney] was telling me to do. He was telling me sign this, sign that, put my fingerprint here and there. And I just – like I said, when he was – I was doing what he was telling me to do. I wasn't aware of nothing going on. I didn't understand nothing that you said, nothing that he said. I was just doing what he told me to do. And I got the list of names of medication that I take. I don't – I can't pronounce the name. I take it three times a day – in the morning…."[2]

---

[2] According to defendant, his references to "triple CMS" was to the Correctional Clinical Case Management System (CCCMS), which is part of the Mental Health

The court reviewed the transcript of the plea proceedings and decided to trail the matter so the attorney who represented defendant at the plea hearing could appear.

On October 3, 2018, the court convened another hearing on defendant's motion to withdraw his plea and admission. Defense counsel said he determined there was no legal basis to withdraw the plea, but that defendant insisted he did not understand what was going on at the time. Defendant again addressed the court:

> "I would like to add that on the day that – for the record, on the day that I was here for my sentencing, and as I explained to you last Wednesday, that I wasn't understanding what you was saying, what [the prosecutor] was saying, right? Because I was – I take medication, right? I'm a … triple CMS patient. And I misspoke. But at the prison – and I got my paperwork here stating that the medicine that I'm taking, that it hindered my thinking. And at that time I wasn't understanding what was going on."

The court directed defendant to give the paperwork about his medication to the bailiff and included the documents in the record. Defendant stated he had marked the medications that he was taking.[3]

The court denied defendant's motion to withdraw his plea, and said it conducted the plea hearing, observed defendant discussed the matter with his attorney, found defendant was cognizant and aware of the circumstances, and held his claim was not credible.

Defendant stated that when he talked to his attorney at the plea hearing, he was trying to explain about "medications, about the part that I wasn't even understanding what [the court] was saying," and that he was "under distress from the medication I was on." The court denied the motion.

---

Delivery System for state prison inmates. (See, e.g., *Coleman v. Brown* (E.D. Cal. 2014) 28 F.Supp.3d 1068, 1073–1075.)

[3] The court treated these documents as confidential, and they have been filed with this court under seal.

**Sentencing**

On the same day, the court sentenced defendant to the lower term of 16 months, doubled to 32 months as the second strike term, pursuant to the negotiated disposition, to be served consecutive to the term he was already serving in state prison.

The court imposed a restitution fine of $300 (§ 1202.4, subd. (b)) and suspended the parole revocation fine of $300 (§ 1202.45). It also imposed a court operations assessment fee of $40 (§ 1465.8, subd. (a)), and a criminal conviction assessment of $30 (Gov. Code, § 70373).

On October 5, 2018, defendant filed a timely notice of appeal, and requested and received a certificate of probable cause.

## DISCUSSION

### I.     Mental Health Diversion

Defendant contends the matter must be remanded for the court to consider his eligibility for pretrial diversion under section 1001.36 based on his alleged mental health problems. The People assert defendant has forfeited review of this issue.

We will review section 1001.36, the procedural history of this case, and the California Supreme Court's ruling in *People v. Frahs* (2020) 9 Cal.5th 618 (*Frahs*) and find remand is required in this case.

#### A.     *Enactment of Section 1001.36*

Effective June 27, 2018, "the Legislature enacted … sections 1001.35 and1001.36, which created a pretrial diversion program for certain defendants with mental health disorders. [Citation.]" (*Frahs, supra*, 9 Cal.5th at p. 624, fn. omitted.)

"Section 1001.36 authorizes a pretrial diversion program for defendants with qualifying mental disorders. The statute defines ' "pretrial diversion" ' as 'the postponement of prosecution, either temporarily or permanently, at any point in the judicial process from the point at which the accused is charged until adjudication, to allow the defendant to undergo mental health treatment ....' (§ 1001.36, subd. (c).) The

5.

stated purpose of the diversion statute 'is to promote all of the following: [¶] (a) Increased diversion of individuals with mental disorders to mitigate the individuals' entry and reentry into the criminal justice system while protecting public safety. [¶] (b) Allowing local discretion and flexibility for counties in the development and implementation of diversion for individuals with mental disorders across a continuum of care settings. [¶] (c) Providing diversion that meets the unique mental health treatment and support needs of individuals with mental disorders.' (§ 1001.35, subds. (a)–(c).)" (*Frahs, supra*, 9 Cal.5th at p. 626.)

"As originally enacted, section 1001.36 provided that a trial court may grant pretrial diversion if it finds all of the following: (1) the defendant suffers from a qualifying mental disorder; (2) the disorder played a significant role in the commission of the charged offense; (3) the defendant's symptoms will respond to mental health treatment; (4) the defendant consents to diversion and waives his or her speedy trial right; (5) the defendant agrees to comply with treatment; and (6) the defendant will not pose an unreasonable risk of danger to public safety if treated in the community. (Former § 1001.36, subd. (b)(1)–(6).) Section 1001.36 was subsequently amended by Senate Bill No. 215 (2017–2018 Reg. Sess.) (Senate Bill 215) to specify that defendants charged with certain crimes, such as murder and rape, are ineligible for diversion. (§ 1001.36, subd. (b)(2), as amended by Stats. 2018, ch. 1005, § 1.)" (*Frahs, supra*, 9 Cal.5th at pp. 626–627.)

"If the defendant makes a prima facie showing that he or she meets all of the threshold eligibility requirements and the defendant and the offense are suitable for diversion, and the trial court is satisfied that the recommended program of mental health treatment will meet the specialized mental health treatment needs of the defendant, then the court may grant pretrial diversion. (§ 1001.36, subds. (a), (b)(3) & (c)(1).) The maximum period of diversion is two years. (*Id.*, subd. (c)(3).) If the defendant is subsequently charged with an additional crime, or otherwise performs unsatisfactorily in

6.

the assigned program, then the court may reinstate criminal proceedings. (*Id.*, subd. (d).) 'If the defendant has performed satisfactorily in diversion, at the end of the period of diversion, the court shall dismiss the defendant's criminal charges that were the subject of the criminal proceedings at the time of the initial diversion' and 'the arrest upon which the diversion was based shall be deemed never to have occurred.' (*Id.*, subd. (e).)" (*Frahs, supra*, 9 Cal.5th at p. 627.)

### B.  Procedural History

On May 31, 2018, defendant entered into the negotiated disposition and pleaded no contest to felony obstructing or resisting an executive officer (§ 69) with a prior strike conviction.

As noted above, on June 27, 2018, section 1001.36 was signed into law and became effective.

On June 29, July 2, 2018, September 26, and October 3, 2018, the court held proceedings on defendant's intent to file a new trial motion. The court appointed a new attorney to investigate defendant's claims of errors. After an investigation, the newly appointed counsel said there was no basis for a new trial motion. Defendant addressed the court and said he was on medication during the plea hearing and did not understand what happened. The court denied defendant's motion to withdraw his plea and conducted the sentencing hearing.

Defendant never argued his plea should be withdrawn because of the enactment of section 1001.36, or claimed he had a mental health problem that was a factor in his commission of the charged offenses.

### C.  The Parties' Contentions

In the initial briefing in this case, defendant argued his no contest plea, conviction, and sentence must be conditionally reversed and the matter remanded for the court to consider whether he should receive pretrial diversion pursuant to section 1001.36, a statute enacted after he pleaded no contest and before the numerous hearings on his

motion to withdraw his plea. Defendant argued the newly enacted statute is retroactive and would apply to his case since it is not yet final. Defendant further argued the record supports a prima facie case for diversion based on his statements at the hearing on the motion to withdraw his plea, the list of medications that he presented in support of the motion (that is sealed as confidential), and his custody status at CCCMS.

Defendant also argued he did not forfeit this issue because his statements at the hearing on the motion to withdraw placed the court on notice that he had mental health disorders. In the alternative, defendant asserted counsel was prejudicially ineffective for failing to raise the diversion at the subsequent hearings.

In response, the People asserted that defendant's case was adjudicated when he entered his plea and was sentenced, it could not be remanded for "pretrial diversion," section 1001.36 is not retroactive, and he forfeited this issue since he never requested diversion.

### D. *Frahs*

At the time of the initial briefing in this case, there was a split among appellate courts as to whether section 1001.36 was retroactive to permit remand for a diversion hearing after the defendant had been convicted and sentenced. (See, e.g., *Frahs, supra*, 9 Cal.5th at p. 631, fn. 2.) In *Frahs*, the California Supreme Court resolved the conflict and held section 1001.36 is fully retroactive to cases not yet final on appeal under certain circumstances. (*Id*. at p. 624.)

The defendant in *Frahs* was charged with two counts of second degree robbery and one felony count of throwing a substance at a motor vehicle with intent to cause injury, with a prior serious felony enhancement. (*Frahs, supra*, 9 Cal.5th at p. 625.) The defendant testified at trial about suffering hallucinations, numerous hospitalizations, and that a conservator had once been appointed to care for him. The defendant also testified he stopped taking his prescribed medication before the charged offenses and experienced severe hallucinations and delusions at the time. (*Ibid*.) A clinical and forensic

8.

psychologist testified on the defendant's behalf, stating that the defendant had been previously diagnosed with schizoaffective disorder, described the defendant as "very ill and unstable," and that he suffered a psychotic episode and was not in touch with reality at the time of the offenses. (*Id*. at p. 625.) After a jury trial, the defendant was convicted of two counts of robbery and sentenced to nine years in prison. (*Id*. at pp. 625–626.)

*Frahs* explained that section 1001.36 was enacted after the defendant was convicted and sentenced, and while his appeal was pending. (*Frahs, supra*, 9 Cal.5th at p. 626.) *Frahs* held the inference of retroactivity in *In re Estrada* (1965) 63 Cal.2d 740 applies to section 1001.36 so that defendants with qualifying mental disorders whose cases are not yet final are entitled to limited remand for the trial court to determine whether they are eligible for mental health diversion. (*Frahs*, *supra*, at pp. 624–625.) *Frahs* held "the ameliorative nature of the diversion program places it squarely within the spirit of the *Estrada* rule," and section 1001.36 applies retroactively to all cases not yet final on appeal. (*Frahs, supra*, 9 Cal.5th at pp. 631–637.)

In reaching this conclusion, *Frahs* declined to "precisely define 'until adjudication,' as used in section 1001.36, subdivision (c)" (*Frahs*, *supra*, 9 Cal.5th at p. 633, fn. 3), but rejected the People's argument that applying the statute retroactively "to cases after adjudication would risk potentially 'undermining the legitimacy' of a jury's verdict," particularly if the defendant testified before the jury and was still found guilty. (*Id*. at p. 636.) "But even if we were to assume some such overlap in a subset of the cases to which the diversion statute may apply (the statute does not define the term 'significant factor,' and we have no occasion here to do so), the more fundamental fact is that it would not provide a clear indication that the statute was not intended to apply retroactively. The Legislature could well have intended to allow judges to decide under the statute whether a defendant's mental disorder was a 'significant factor in the commission of the charged offense' [citation] even after a verdict in which a mental health defense had been presented but rejected by the trier of fact." (*Ibid*.)

9.

*Frahs* next turned to the potential remedy and held a limited remand was appropriate. (*Frahs, supra*, 9 Cal.5th at p. 637.) In doing so, *Frahs* rejected the People's argument that the defendant had to demonstrate that he satisfied all six factors of statutory eligibility before an appellate court could remand for a hearing under section 1001.36. (*Frahs*, at pp. 637–638.) *Frahs* held that "imposing such a high bar in the posture of proceedings such as these would be unduly onerous and impractical. When, as here, a defendant was tried and convicted before section 1001.36 became effective, the record on appeal is unlikely to include information pertaining to several eligibility factors …." (*Id*. at p. 638.)

*Frahs* concluded that "a conditional limited remand for the trial court to conduct a mental health diversion eligibility hearing is warranted when, as here, the record affirmatively discloses that the defendant appears to meet at least the first threshold eligibility requirement for mental health diversion – the defendant suffers from a qualifying mental disorder [citation]." (*Frahs, supra*, 9 Cal.5th at p. 640.)

### *Subsequent Briefing*

In light of *Frahs*, we requested additional briefing from the parties on its impact to the facts of this case. Defendant argues that based on *Frahs*, section 1001.36 applies retroactively to his case since the statute was enacted after his plea hearing, and his case is not yet final on appeal. Defendant further argues the record shows he met the threshold requirement to obtain remand since he submitted a list of medications to the trial court that showed he suffered from mental health disorders, and he was housed in a prison facility that provided mental health treatment.

In response, the People assert that *Frahs* has not changed the argument that defendant forfeited any possible claim under section 1001.36 since he had the ability to request relief under the statute for several months but failed to do so. The People further argue that defendant's statements at the hearing on his motion to withdraw his plea were

10.

insufficient to satisfy even a preliminary showing under section 1001.36. The People also argue that ineffective assistance is not a cognizable claim on this record.

### E.    Analysis

We find that defendant has forfeited review of his claims under section 1001.36. Defendant was alleged to have committed the charged offenses on or about February 24, 2017, when he was a state prison inmate. On May 31, 2018, over one year later, defendant pleaded no contest pursuant to the negotiated disposition.

Section 1001.36 was enacted about one month after defendant entered his no contest plea. However, defendant had nearly four additional months to raise the issue of diversion but failed to do so. Just a month after entering his plea, defendant advised the court that he wanted to withdraw his plea but did not state the reasons. On July 2, 2018, the court temporarily relieved the deputy public defender and appointed another attorney to investigate a possible motion to withdraw his plea.

On September 26, 2018, the newly appointed attorney stated he had reviewed the entirety of the record and concluded that he could not make a motion to withdraw in good faith. The court denied defendant's motion to withdraw the plea, relieved the second counsel, and reappointed the deputy public defender. At that point, defendant advised the court that he was receiving medication from the mental health program in the prison when he entered the plea in this case, he did not understand the plea proceedings, and he just did what his attorney told him to do. Defendant never said he was on medication, receiving mental health treatment, or suffering from a mental health condition when he committed the charged offense in February 2017.

On October 3, 2018, the court convened another hearing on defendant's motion to withdraw his plea. Defense counsel again said there was no legal basis to withdraw the plea. Defendant again addressed the court and repeated that he was on medication and a patient in the prison's mental health division when he entered his plea, presented a list of his medication to the court, and said he did not understand what was going on at the plea

11.

hearing. However, he did not say that he was suffering from a mental health condition or on medication when he committed the charged offense. The court denied defendant's motion and found that he appeared cognizant and aware of the circumstances at the plea hearing, and his claim was not credible.

Defendant thus had nearly four months to raise this issue and had the benefit of a newly appointed attorney to determine whether there were grounds for a motion to withdraw his plea, based on his claim that he was a patient in the prison's mental health division and he was on medication and did not understand what was going on at the plea hearing. Both attorneys were aware of his alleged mental health issues and, by October 2018, one or both of them should have been aware of the enactment of section 1001.36 in June 2018. However, both attorneys advised the court there was no basis to file a motion to withdraw in good faith, and the court denied the motion and found defendant's claims were not credible based on its observations of his conduct and demeanor at the plea hearing.

In the alternative, defendant argues his attorney was prejudicially ineffective for failing to request diversion after section 1001.36 was enacted. "A criminal defendant's federal and state constitutional rights to counsel [citations] includes the right to *effective* legal assistance. When challenging a conviction on grounds of ineffective assistance, the defendant must demonstrate counsel's inadequacy. To satisfy this burden, the defendant must first show counsel's performance was deficient, in that it fell below an objective standard of reasonableness under prevailing professional norms. Second, the defendant must show resulting prejudice, i.e., a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different. When examining an ineffective assistance claim, a reviewing court defers to counsel's reasonable tactical decisions, and there is a presumption counsel acted within the wide range of reasonable professional assistance. It is particularly difficult to prevail on an *appellate* claim of ineffective assistance. On direct appeal, a conviction will be reversed

12.

for ineffective assistance only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation. All other claims of ineffective assistance are more appropriately resolved in a habeas corpus proceeding. [Citations.]" (*People v. Mai* (2013) 57 Cal.4th 986, 1009; *People v. Williams* (1997) 16 Cal.4th 153, 214–215; *People v. Gray* (2005) 37 Cal.4th 168, 207.)

"In determining whether the significance of a change in the law excuses counsel's failure to object at trial, we consider the 'state of the law as it would have appeared to competent and knowledgeable counsel at the time of trial.' [Citation.]" (*People v. Black* (2007) 41 Cal.4th 799, 811, overruled on other grounds by *Cunningham v. California* (2007) 549 U.S. 270.) Section 1001.36 had been enacted four months prior to defendant's sentencing hearing. During that four-month period, the court held several hearings on defendant's motion to withdraw his plea. Defendant had the benefit of two attorneys who could have raised the issue and requested diversion under the newly enacted statute, with one attorney specifically appointed to determine whether there were grounds to file a motion to withdraw his plea. Nevertheless, neither attorney argued defendant should be allowed to withdraw his plea because section 1001.36 was enacted a month after he pleaded no contest, and the record does not contain evidence that defendant suffered from a diagnosed mental health disorder when he committed the charged offense in February 2017. The record indicates satisfactory reasons why both of defendant's attorneys did not rely on the newly enacted diversion statute during the four-month period when the court considered defendant's motion to withdraw his plea - because there was no evidence he was suffering from a mental health condition when he committed the instant offense.

"An appeal is 'limited to the four corners of the [underlying] record on appeal" (*People v. Waidla* (2000) 22 Cal.4th 690, 703, fn. 1), and defendant's ineffective

13.

assistance claim would be more appropriately pursued in a habeas corpus proceeding. (*People v. Mai, supra*, 57 Cal.4th at p. 1009.)

## II. The Restitution Fine, Fees, and Assessments

Defendant asserts the court improperly ordered him to pay a restitution fine and other fees in violation of his due process rights because it failed to determine if he had the ability to pay these amounts, as set forth in *Dueñas* and *People v. Castellano* (2019) 33 Cal.App.5th 485. Defendant argues the restitution fine must be stayed and the fees reversed, or the matter must be remanded for an ability to pay hearing.

Defendant's due process argument is based on *Dueñas*, which was decided after his sentencing hearing and while this appeal was pending. *Dueñas* held that "due process of law requires the trial court to conduct an ability to pay hearing and ascertain a defendant's present ability to pay" before it imposes any fines or fees. (*Dueñas, supra*, 30 Cal.App.5th at pp. 1164, 1167.)[4]

As we explained in *People v. Aviles* (2019) 39 Cal.App.5th 1055 (*Aviles*), we believe *Dueñas* was wrongly decided and an Eighth Amendment analysis is more appropriate to determine whether restitution fines, fees, and assessments in a particular case are grossly disproportionate and thus excessive. (*Aviles*, pp. 1068–1072.) Under that standard, the fines and fees imposed in this case are not grossly disproportionate to defendant's level of culpability and the harm he inflicted, and thus not excessive under the Eighth Amendment. (*Aviles,* at p. 1072.)

Next, to the extent *Dueñas* applies to this case, defendant did not forfeit review of the issue. Section 1202.4, subdivisions (c) and (d) permit a party to raise an ability to pay objection when the court imposes a restitution fine above the statutory minimum. The

---

[4] The California Supreme Court is currently considering whether trial courts must consider a defendant's ability to pay before imposing or executing fines, fees, and assessments; and if so, which party bears the applicable burden of proof. (See *People v. Kopp* (2019) 38 Cal.App.5th 47, 94–98, review granted Nov. 13, 2019, S257844.)

court imposed the statutory minimum restitution fine of $300, and defendant lacked the statutory ability to raise an ability to pay objection. In addition, any objections to the assessments imposed under section 1465.8 and Government Code section 70373 would not have been futile. (See, e.g., *People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1154; *Aviles, supra*, 39 Cal.App.5th at p. 1074.)

While defendant did not forfeit review of his due process argument, even if we agreed with *Dueñas* and *Castellano,* we would still reject defendant's constitutional claims and find any error arising from the court's failure to make an ability to pay finding was harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 24; *People v. Jones* (2019) 36 Cal.App.5th 1028, 1030–1031; *People v. Johnson* (2019) 35 Cal.App.5th 134, 139–140.)

> " ' "Ability to pay does not necessarily require existing employment or cash on hand." [Citation.] "[I]n determining whether a defendant has the ability to pay a restitution fine, the court is not limited to considering a defendant's *present* ability but may consider a defendant's ability to pay in the future." [Citation.] This include[s] the defendant's ability to obtain prison wages and to earn money after his release from custody. [Citation.]' [Citations.]" (*Aviles*, *supra*, 39 Cal.App.5th at p. 1076.)

We can infer from the instant record that defendant has the ability to pay the amount of the fine and fees imposed in this case from probable future wages, including prison wages. (*Aviles, supra*, 39 Cal.App.5th at p. 1076; *People v. Ellis* (2019) 31 Cal.App.5th 1090, 1094; *People v. Douglas* (1995) 39 Cal.App.4th 1385, 1397.) There is nothing in the record to show that defendant would be unable to satisfy the fines and fees imposed by the court while serving his prison term, even if he fails to obtain a prison job.

While it may take defendant time to pay the amounts imposed in this case, that circumstance does not support his inability to make payments on these amounts from either prison wages or monetary gifts from family and friends during his prison sentence. (See, e.g., *People v. Potts* (2019) 6 Cal.5th 1012, 1056–1057; *People v. Lewis* (2009) 46 Cal.4th 1255, 1321; *People v. DeFrance* (2008) 167 Cal.App.4th 486, 505.)

We conclude that based on the record before this court, defendant has the ability to pay the restitution fine and fees that were imposed.

## **<u>DISPOSITION</u>**

The judgment is affirmed.